Gregory R. **SCHAFFER** d/b/a Gregory R. Schaffer Construction,
Appellee,

v.

**FRANK MOYER CONSTRUCTION, INC.,** Appellant.

No. 99–0669.

Supreme Court of Iowa.

May 31, 2001.

David L. Wetsch of Wetsch & Associates and Jeanne K. Johnson, Des Moines, for appellant.

Catherine C. Dietz–Kilen of Harrison & Dietz–Kilen, Des Moines, for appellee.

LAVORATO, Chief Justice.

In this action for foreclosure of a mechanic's lien, the district court entered judgment for Gregory R. Schaffer, a subcontractor, against Frank Moyer Construction, Inc., a contractor. Frank Moyer Construction, Inc. appeals, challenging the district court's (1) finding that the lien was valid and enforceable, (2) dismissal of its counterclaim, and (3) award of trial and appellate attorney fees and costs. We affirm and remand with directions.

## I. Facts.

We review actions to enforce mechanic's liens de novo. *Baumhoefener Nursery, Inc. v. A & D P'ship, II*, 618 N.W.2d 363, 366 (Iowa 2000). While we give weight to the district court's findings of fact, we are not bound by them. Iowa R.App. P. 14(f)(7); *Baumhoefener*, 618 N.W.2d at 366. On our de novo review, we make the following findings of fact.

Frank Moyer Jr. is president of Frank Moyer Construction, Inc. (For convenience we will refer to the individual and company collectively as Moyer.) On January 12, 1995, Moyer entered into a real estate contract with Michelle LaMasters and Steven Hartung. The contract called for Moyer to sell Hartung and LaMasters land located at 13462 Lakeshore Drive, Clive, Iowa, and to build and sell them a custom house on that land. LaMasters and Hartung agreed to pay Moyer $418,350 for the house and lot.

Construction started in February 1995. LaMasters and Hartung wanted Gregory Schaffer to do the trim carpentry work on the home. Moyer hired Schaffer to provide such work.

The agreement between Moyer and Schaffer was not reduced to writing. At the time, Schaffer had other job commitments. For this reason, Schaffer told Moyer that he could not guarantee a completion date. He also told Moyer that he would not have a full crew working on the house and that he alone would be working on the job unless he was able to have more workers there. Moyer agreed to these terms.

Schaffer began the trim work in June. In August, Moyer fired Schaffer apparently because Moyer was dissatisfied with the progress of the trim work. Moyer hired Larry Sutherland to complete the trim work.

On September 11, Schaffer submitted a bill to Moyer for work completed before Moyer fired him. The bill was for $7577. On October 3, Schaffer filed a verified statement of account to perfect his mechanic's lien for the work he had done. *See* Iowa Code §§ 572.2, .8 (1995).

On October 24, Moyer served Schaffer with a notice of demand to bring suit. *See* Iowa Code § 572.28 ("Upon the written demand of the owner, the owner's agent, or contractor, served on the lienholder requiring the lienholder to commence action to enforce the lien, such action shall be commenced within thirty days thereafter, or the lien and all benefits derived therefrom shall be forfeited.").

## II. Proceedings.

On November 8, Schaffer filed the present suit against Moyer seeking a judgment

for $7577 and foreclosure of his mechanic's lien against the property.

On November 17, Moyer deeded the property to LaMasters and Hartung.

On December 1, Moyer moved to dismiss the suit on the ground that Schaffer's mechanic's lien was unenforceable because Schaffer had failed to provide LaMasters and Hartung notice of his mechanic's lien pursuant to Iowa Code section 572.14(2). The district court granted the motion, but on appeal we reversed and remanded for further proceedings. *See Schaffer v. Frank Moyer Constr., Inc.*, 563 N.W.2d 605 (Iowa 1997) (*Schaffer I*).

Following remand, Moyer filed an answer and affirmative defenses. For its affirmative defenses, Moyer asserted that (1) the property was at all times the owner-occupied dwelling of LaMasters and Hartung; (2) Schaffer had failed to serve them notice of his mechanic's lien; (3) LaMasters and Hartung had paid Moyer in full thereby rendering the lien unenforceable against the company pursuant to Iowa Code section 572.14(2); (4) Schaffer had failed to join LaMasters, Hartung, and other interested parties as indispensable parties; and (5) Schaffer had failed to perform the carpentry work in a good and workmanlike manner.

Later, the district court sustained Schaffer's motion to join LaMasters, Hartung, and Liberty Savings Bank, which held a mortgage against the property. Schaffer dismissed these defendants when Moyer posted a bond in twice the amount of Schaffer's claim. Pursuant to Iowa Code section 572.15, the bond had the effect of discharging Schaffer's mechanic's lien on the property.

The court also sustained Moyer's motion to amend its answer to assert a counterclaim. In its counterclaim, Moyer asserted that Schaffer and Moyer orally agreed that Schaffer would provide finish carpentry work in a timely and workmanlike manner. Moyer further asserted that Schaffer breached the agreement and as a result of this breach, Moyer incurred $11,000.60 for (1) repairs; (2) interest expenses associated with the delay; and (3) labor and material charges associated with the work done by Sutherland. Moyer asked for a judgment in its favor against Schaffer for the $11,000.60.

Moyer moved for summary judgment on its counterclaim, which the district court overruled at the time it entered its ruling on the merits of the case. In that ruling, the district court concluded that Schaffer's lien was valid and enforceable even though he had not provided notice to LaMasters and Hartung under Iowa Code section 572.14(2). The court ruled in the alternative that even if the lien was not enforceable, Schaffer was still entitled to enforce his contract with Moyer. On this alternative theory, the court found that (1) Schaffer had "substantially performed his obligations" under his oral agreement with Moyer for carpentry trim work; (2) Moyer had refused to pay him; and (3) Schaffer was entitled to reasonable compensation for the work he had completed. The court entered judgment against Moyer Construction in favor of Schaffer for $7577 plus interest. The court denied Moyer's counterclaim.

Following this ruling, the district court rejected Moyer's Iowa Rule of Civil Procedure 179(b) motion in which Moyer asserted, among other things, that it had established its counterclaim for expenses it incurred in remedying Schaffer's defective workmanship.

In another post-trial ruling, the district court—over Moyer's objections—awarded Schaffer $20,875.27 in attorney fees and costs, plus interest.

### III. Issues.

On appeal, Moyer raises four issues. First, it contends that the district court erred in concluding that Schaffer had a valid and enforceable mechanic's lien. In support of its contention, Moyer argues that Schaffer had failed to properly serve notice on LaMasters and Hartung.

Second, Moyer contends the district court erred in concluding Schaffer could recover against it on a breach-of-contract claim. In support of this contention, Moyer argues that alternative theories of recovery may not be joined in an action to enforce a mechanic's lien.

Third, Moyer contends that the district court erred in failing to award it damages on its counterclaim for amounts it expended to redo Schaffer's work.

Last, Moyer contends the district court abused its discretion in awarding Schaffer attorney fees and costs.

### IV. Validity of the Mechanic's Lien.

In its motion for summary judgment, reasserted in its motion for directed verdict, Moyer contended that it was entitled to judgment as a matter of law. In support of its contention, Moyer argued the facts were uncontroverted that LaMasters and Hartung had an equitable ownership in the property before Schaffer filed his mechanic's lien. Moyer argued further that because of this ownership interest, the building was an "owner-occupied" dwelling and this fact required Schaffer to serve LaMasters and Hartung with notice of his mechanic's lien pursuant to Iowa Code section 572.14(2). Schaffer's failure to serve such notice, Moyer asserted, rendered his lien invalid and unenforceable. For these reasons, Moyer contends on appeal that the district court erred in failing to grant the summary judgment motion and motion for directed verdict.

**A. Applicable law.** Iowa Code section 572.2 describes who is entitled to a mechanic's lien:

> Every person who shall furnish any material or labor for, or perform any labor upon, any building or land for improvement, alteration, or repair thereof ... by virtue of any *contract with the owner*, the owner's agent, trustee, contractor or subcontractor ... shall have a lien upon such building or improvement, and land belonging to the *owner* ... to secure payment for material or labor furnished or labor performed.

Iowa Code § 572.2 (emphasis added).

An "owner" includes "every person for whose use or benefit any building, erection, or other improvement is made...." Iowa Code § 572.1(3).

A "subcontractor" includes

> every person furnishing material or performing labor upon any building, erection, or other improvement, except those having contracts therefore directly with the owner, the owner's agent, or trustee.

Iowa Code § 572.1(5).

According to the plain language of section 572.2, before a lien can arise, the contract referred to in section 572.2 must be with "the owner, the owner's agent, trustee, contractor, or subcontractor." This court has therefore refused to enforce a mechanic's lien when the contractor has performed for someone other than a person who has a present and beneficial interest in the property. *See Clemens Graf Droste Zu Vischering v. Kading*, 368 N.W.2d 702, 710 (Iowa 1985) (holding that contracts between contractors and vendor, entered into after vendor conveyed his interest in the building to vendee, to improve the building to make it ready for use as a restaurant could not provide basis for mechanic's lien); *see also Schaffer I*, 563 N.W.2d at 608 ("Under the statutory

scheme found in chapter 572, owners are the persons against whose interest the lien is asserted. It would thus be a useless exercise to authorize a lien against a statutorily defined 'owner' who holds no legal interest that can be foreclosed upon in a property-law sense.").

■ "Owner" for purposes of section 572.2 includes both the buyer and seller under an executory contract. *Louie's Floor Covering, Inc. v. DePhillips Interests, Ltd.*, 378 N.W.2d 923, 926 (Iowa 1985); *Clemens*, 368 N.W.2d at 708.

A person perfects a mechanic's lien by filing a "verified statement of account" as described in Iowa Code section 572.8. The statement must be filed with the clerk of the district court of the county where the property to be charged with the lien is located. Iowa Code § 572.8. The principal contractor or subcontractor must file the statement "within ninety days from the date on which the last of the material was furnished or the last of the labor was performed." Iowa Code § 572.9.

Failure to file within the ninety-day period does not necessarily defeat the lien. *Id.* The contractor or subcontractor can perfect the lien after the ninety-day period by following the notice procedure in Iowa Code section 572.10. Liens perfected under this latter provision, however, are enforced "only to the extent of the balance due from the owner to the contractor at the time of the service" of the notice set out in section 572.10. Iowa Code § 572.11.

An owner need not pay the original contractor until the expiration of ninety days from the completion of the building or improvement unless such contractor furnishes the home owner with lien waivers or a bond holding the owner harmless from mechanic's liens filed by subcontractors. Iowa Code § 572.13.

According to Iowa Code section 572.14(1),

> payment to the original contractor by the owner of any part or all of the contract price of the building or improvement before the lapse of the ninety days allowed by law for the filing of a mechanic's lien by a subcontractor, does not relieve the owner from liability to the subcontractor for the full value of any material furnished or labor performed upon the building, land, or improvement if the subcontractor files a lien within the time provided by law for its filing.

Iowa Code § 572.14(1).

There is an exception to the liability described in section 572.14(1) in the case of an owner-occupied dwelling. As to an owner-occupied dwelling, "a mechanic's lien perfected under [chapter 572] is enforceable only to the extent of the balance due from the owner to the principal contractor at the time" the subcontractor delivers notice to the owner or the owner's spouse in the form set out in Iowa Code section 572.14(3). Iowa Code § 572.14(1).

The notice must essentially inform the owner that (1) the subcontractor is providing labor or materials or both to the owner's property; (2) chapter 572 may permit the enforcement of a lien against the property to secure payment for labor and materials supplied; (3) the owner is not required to pay more to the person claiming the lien than the amount of money due from the owner to the contractor; and (4) the owner should not make further payments to the contractor without a lien waiver from the contractor as to the lien claimed by the subcontractor. Iowa Code § 572.14(3).

Iowa Code section 572.1 defines an "owner-occupied dwelling" to mean

> the homestead of an owner . . . and actually occupied by the owner or the

spouse of the owner or both.... *"Owner-occupied dwelling" includes a newly constructed dwelling to be occupied by the owner as a homestead, or a dwelling that is under construction and being built as a homestead.*

Iowa Code § 572.1(4) (emphasis added).

■ **B. Analysis.** Here the following facts are not disputed. Schaffer is a subcontractor. At the time Schaffer perfected his lien, Moyer, as the vendor, was the record title holder and LaMasters and Hartung, as vendees, were equitable owners. For purposes of chapter 572, and as among Moyer and LaMasters and Hartung, all three were therefore owners at the time Schaffer perfected his lien because each had a beneficial interest in the property. Schaffer had an oral agreement with Moyer, one of the owners, to perform services and provide materials for the property. Schaffer had no such agreement with LaMasters and Hartung, the other owners.

The property was ostensibly an owner-occupied dwelling because it was being built by or for owners—LaMasters and Hartung—who would occupy the dwelling as a homestead. Consequently, *they* could ostensibly claim protection under section 572.14(2) if Schaffer did not provide them with the owner-occupied dwelling notice required in section 572.14(2). Moyer, however, could not claim protection under section 572.14(2) because it would not occupy the dwelling in the future as a homestead. Therefore, Schaffer was not required to serve Moyer with notice under Iowa Code section 572.14(2) in order to enforce his lien. And as far as Moyer is concerned, Schaffer had perfected his mechanic's lien.

■ Although Schaffer did not provide notice to LaMasters and Hartung under section 572.14(2), we think, for reasons that follow, that failure did not render the mechanic's lien invalid and unenforceable.

At the time Schaffer filed his mechanic's lien, Moyer was the record title holder. LaMasters' and Hartung's purchase contract with Moyer was not recorded. Schaffer therefore did not have constructive notice of this purchase contract *See Clemens,* 368 N.W.2d at 709 (holding that contractors have constructive notice of all information contained in recorded documents and have a duty of inquiry concerning circumstances disclosed in those records).

Moyer contends, however, that Schaffer had actual knowledge that LaMasters and Hartung owned the property. In support of this contention, Moyer relies on the fact that (1) Schaffer knew the home was being custom-built for LaMasters and Hartung; (2) Schaffer knew LaMasters had asked that he perform the finish carpentry in the house; (3) Schaffer knew LaMasters visited the site two or three times a day during construction; and (4) Schaffer's attorney talked to LaMasters two weeks before the closing on November 17.

We find that Schaffer's knowledge as to the first three facts falls short of establishing that Schaffer had actual knowledge of LaMasters' and Hartung's ownership of the home. As to the last fact, LaMasters testified that when she talked to Schaffer's attorney she did not tell him that the home was hers. Based on this testimony, we find the attorney's conversation with LaMasters likewise falls short of establishing Schaffer's knowledge of LaMasters' and Hartung's ownership of the property.

In similar circumstances, one court has held that service of notice and claim of mechanic's lien on a record owner suffices even if it turns out that the record owner is not the true owner. *See Lewis v. Midway Lumber, Inc.,* 114 Ariz. 426, 432, 561 P.2d 750, 756 (Ct.App.1977). The court noted that

[a] lien claimant can only be charged with such knowledge of the ownership of the property as is apparent from the public records. He cannot be required to go behind the public record to ascertain whether a conveyance, complete on its face, is burdened with some secret agreement to reconvey to the real owner.

*Id.; see also* 56 C.J.S. *Mechanics' Liens* § 53, at 77 (1992) ("[I]n the absence of knowledge or notice, the lien claimant is entitled to rely on the record title.").

Schaffer had a right to rely on the recorded deed when he filed his mechanic's lien. The deed showed that Moyer was the owner of the property. Therefore, as far as the recording law was concerned, Moyer was the owner of the property and LaMasters and Hartung had no beneficial interest in the property. In short, as far as the record was concerned, LaMasters and Hartung were not "owners" within the meaning of chapter 572 and, more specifically, were not "owners" within the meaning of "owner-occupied dwelling" as defined in section 572.1(4). Accordingly, there was no reason for Schaffer to believe he had to give LaMasters and Hartung notice under Iowa Code section 572.14(2) in order to perfect his lien for his work and materials. His failure to do so did not render his mechanic's lien invalid and unenforceable.

We have recognized that "[m]echanic's liens stem from principles of equity which require paying for work done or materials delivered" and that "[t]he doctrines of restitution and prevention of unjust enrichment drive the mechanic's lien entitlement." *Carson v. Roediger,* 513 N.W.2d 713, 715 (Iowa 1994). Additionally, we have recognized that we are to "liberally construe[ ] the mechanic's lien statute to promote these objectives and assist parties in obtaining justice." *Id.* We are convinced these principles have particular application here and support the conclusion we have reached.

■ We reject Moyer's contention that the dismissal of LaMasters and Hartung from the lawsuit requires reversal in this case. Because the bond was in place at the time of the dismissal, LaMasters and Hartung were no longer indispensable parties. This is because the bond discharged the lien, leaving the property free of any encumbrance. *See* Iowa Code § 572.15 (providing that an owner, principal contractor, or intermediate subcontractor may discharge a mechanic's lien by filing a bond in twice the amount of the sum for which the claim for the lien is filed).

Because we conclude Schaffer's mechanic's lien was valid and enforceable, the district court was correct in overruling Moyer's motions for summary judgment and directed verdict. The conclusion we reach makes it unnecessary to address whether the district court erred in ruling in the alternative on Schaffer's breach of contract claim. That issue is now moot.

### V. Counterclaim.

■ Moyer alleged in its counterclaim that (1) it and Schaffer entered into an oral agreement in which Schaffer agreed to provide finish carpentry services in a timely and workmanlike manner; (2) the work was not finished in a timely manner; (3) the work that was done was not completed in a workmanlike manner; and (4) as a result of this breach of contract, Moyer suffered damages. Moyer requested damages for (1) charges for labor to redo Schaffer's work in the amount of $3710; (2) $720 to repair damage Schaffer did to drywall; (3) $340 for replacement of damaged cabinets; (4) $4489 in interest related to delay in completing the home caused by Schaffer; (5) $2,282.74 for materials used to redo Schaffer's work; and (6) $4500 for

repair and replacement of oak endcaps awarded against Moyer to LaMasters and Hartung in a related lawsuit.

The burden is on Moyer to prove its counterclaim by a preponderance of the evidence. *See* Iowa R.App. P. 14(f)(5).

The district court addressed twenty-five items that Moyer claimed were redone by Sutherland, the replacement carpenter. The court found Moyer had failed to establish that it had incurred any expenses as a result of the need to redo work previously done by Schaffer. The court also found that

> [t]he few items where Sutherland changed any of the work done by Schaffer were no fault of Schaffer unless he was at fault for adding extra touches to the trim on the front and back door, which were not to the taste of LaMasters. These items would have caused no additional expenses to [Moyer had it] permitted Schaffer to finish the job rather than firing him.

■ The district court had the advantage of listening to and viewing the witnesses. In matters of witness credibility, we are particularly inclined to give weight to the district court's findings. *See* Iowa R.App. P. 14(f)(7); *Weinhold v. Wolff*, 555 N.W.2d 454, 458 (Iowa 1996). Referring to LaMasters' testimony, the court stated:

> LaMasters was completely satisfied with the quality of all the work done by Schaffer and his family members. She requested two changes because she did not like the style of woodwork details installed by Schaffer. She wanted a "teardrop" removed from the side of a wooden panel above the back door and dentil molding removed from the vertical panels along the sides of the front door. Had she had the opportunity to request of Schaffer that he make these changes, she would have done so.

Schaffer would have made the changes with no extra charge. These are the only two changes to Schaffer's work requested by LaMasters. Neither of these requested changes resulted in Schaffer's work being redone, rather minor pieces of woodwork were removed.

In our de novo review, we agree with these findings of the district court and adopt them as our own.

As for the drywall claim, the district court found:

> It is standard practice when building a new home to repair drywall after the finish carpenters have completed their work. The drywall repair was not undertaken until after Sutherland completed the finish carpentry. The defendant presented no documentation of the bill for drywall repair; nor did he present any evidence as to which drywall repairs, if any, were made necessary by the actions of Schaffer. The defendant has failed to prove that Schaffer caused the defendant to incur any expenses for drywall repair out of the ordinary and expected expense for such repair to a new home.

As to the claim for the damaged cabinets, the district court found:

> The third item of damage claimed by the defendant in its counter-claim is for four cabinet doors, which it claimed were scratched by Schaffer. The cabinets in the home came from only two sources: Kitchen Classics and Phillips Woodwork. The cabinets from Phillips had not arrived at the time Schaffer was fired. Therefore, the defendant can only be referring to cabinets supplied by Kitchen Classics. Val Siddle, from Kitchen Classics, testified that no cabinet doors from the home were replaced. LaMasters testified that none of the cabinets was scratched by Schaffer, but some of

the kitchen cabinets were scratched by Sutherland. Those scratches were repaired by Kitchen Classics and the bill paid by LaMasters. The defendant produced no bill to support its claim. The Court finds that the defendant has failed to prove that it incurred any expenses as a result of repairing or replacing cabinet doors which it alleges were scratched by Schaffer.

As to the interest claim, the district court found:

The fourth item of damage claimed by the defendant is interest for one and one-half months. The defendant claimed that Schaffer delayed the completion of the home by one and one-half months and therefore should be responsible for the interest incurred on the construction loan during that time....

The defendant's claim that Schaffer caused any delay in the completion of the home is not supported by the evidence.... [S]ome of the cabinetry had not even arrived before Schaffer was fired. Schaffer could not have installed these cabinets any sooner. Further, many construction tasks which were not dependent on the completion of the finish carpentry were not begun or completed until after Schaffer was fired, including exterior painting, building a deck, installing the sprinkler system, and completing the concrete for the driveway. Even if Schaffer had completed the finish carpentry months earlier, the home would not have been ready for closing any sooner.

The Court, therefore, finds that the defendant has failed to establish that Schaffer caused a delay in the completion of the home.

As to the claim for materials used to redo Schaffer's work, the district court found:

The final item of the defendant's counterclaim is one for materials used for items it alleges were not properly done by Schaffer. The defendant presented a packet of invoices for materials purchased after Schaffer was fired, but failed to distinguish between charges for those materials which it claims were used to redo work done by Schaffer and those projects which were not. A review of the invoices shows many materials which were clearly used by Sutherland for projects which never involved Schaffer, such as the fireplace mantle.

Having failed to prove that any of the work done by Schaffer had to be redone by Sutherland, as discussed above, the defendant has also failed to establish that any additional materials were necessary to re-do Schaffer's work.

As to the claim for $4500 for replacement of oak endcaps, the district court found:

In litigation separate from that before this Court presently, LaMasters and Hartung were awarded judgment against Moyer Construction.... Included in that judgment is an award for repair and replacement of trim. During trial LaMasters and Hartung had presented a list of construction related damages. The court did not itemize which items of trim were included in the award. A review of the list presented by LaMasters and Hartung shows that the only item of trim on their list which could reasonably be associated with the work done by Schaffer was the oak endcaps.

Four or five of the oak endcaps near the bottom of the stairs had split. Sutherland, testifying on behalf of the defendant, opined that the splits in the wood were defects in the materials and that there was nothing Schaffer could have done to prevent the splits. All wit-

nesses who testified on the matter agreed that the humidity was very high at the time the home was built. All agreed that humidity causes wood to swell, and that when the wood dries out it can split.

Moyer's refusal to repair or replace the damaged oak endcaps was in no way caused by Schaffer. Moyer should not be permitted to shift any part of the judgment awarded against it to Schaffer.

In our de novo review of the record, we agree with all of the district court's findings relating to the claims for (1) damaged drywall; (2) replacement of damaged cabinets; (3) the claim for interest because of delay in construction; (4) materials used on redo items; and (5) replacement of oak endcaps. We adopt these findings as our own.

█ We address one last item: Moyer's claim that Schaffer's charge of $800 for nails is "unrealistic" and "should be reduced to the more realistic figure of $200." The district court did not address this claim. Moyer did not request the district court to address this claim in its Iowa Rule of Civil Procedure 179(b) motion. Its failure to do so waives the claim. *See Lawrence v. Grinde*, 534 N.W.2d 414, 418 (Iowa 1995) (holding that party must raise issue, claim, defense, or legal theory in a rule 179(b) motion to preserve issue for appeal where district court fails to resolve issue properly submitted to it).

In sum, we agree with the district court that Moyer failed to prove its counterclaim by a preponderance of the evidence. The district court was therefore correct in dismissing it.

## VI. Attorney Fees and Costs.

Moyer last contends that the district court abused its discretion in awarding attorney fees pursuant to Iowa Code section 572.32 and erred in awarding attorney fees and costs associated with the first appeal.

**A. Attorney Fees.** In support of its contention regarding attorney fees, Moyer argues that (1) Schaffer was not a successful plaintiff and therefore not entitled to attorney fees; (2) the award included fees associated with the first appeal; and (3) the award was excessive and included fees for duplicative legal assistant's time.

Iowa Code section 572.32 (1997) governs the award of attorney fees and costs because this was the relevant statute in force at the time of the termination of the district court proceedings. *See Fed. Land Bank of Omaha v. Woods*, 480 N.W.2d 61, 70 (Iowa 1992); *Bankers Trust Co. v. Woltz*, 326 N.W.2d 274, 278 (Iowa 1982). This statute provides:

> In a court action to enforce a mechanic's lien, if the plaintiff furnished labor or materials directly to the defendant, the plaintiff, if successful, shall be awarded reasonable attorney fees.

Iowa Code § 572.32.

█ The award of attorney fees under this provision is mandatory. *See* Iowa Code § 572.32 (providing that attorney fees *shall* be awarded); *Baumhoefener*, 618 N.W.2d at 368 (holding that under 1997 version of section 572.32 the award of attorney fees is mandatory). Because the award is mandatory, the district court has no discretion in determining whether to award attorney fees. However, the amount awarded is "vested in the district court's broad, but not unlimited discretion." *Baumhoefener*, 618 N.W.2d at 368. Only when the district court bases its decision of the amount of the award on clearly unreasonable or untenable grounds will this court reverse. *Id.*

█ 1. Was Schaffer a successful plaintiff? Section 572.32 is clear that only

a successful plaintiff in a mechanic's lien action is entitled to attorney fees. Because we have concluded that Schaffer is entitled to enforce his mechanic's lien, he is a successful plaintiff and therefore entitled to attorney fees.

**2. Was the district court empowered to award appellate attorney fees?** Moyer contends that the district court improperly awarded Schaffer fees related to the appeal in *Schaffer I.* In support of its contention, Moyer argues that nothing in Iowa Code section 572.32 empowers the district court to award appellate attorney fees.

His argument raises two questions. First, are appellate attorney fees permitted under section 572.32? Second, if so, is the district court permitted to make such an award?

■ In *Baumhoefener,* we permitted an award of appellate attorney fees under Iowa Code section 572.32. *See* 618 N.W.2d at 368–69. We did so because the mechanic's lienholder prevailed on appeal. Although the question of whether section 572.32 allows appellate attorney fees was not raised in *Baumhoefener,* we think the holding was correct. Section 572.32 in no way limits attorney fees to those incurred in the district court. We therefore think the statute contemplates the award of appellate attorney fees. *See Bankers Trust,* 326 N.W.2d at 278 (using the same rationale to allow appellate attorney fees pursuant to a statute that allowed "attorney's fee" and where parties' agreement which provided for attorneys fees did not limit such fees to only those incurred at trial).

The more difficult question is whether the district court, as opposed to the appellate court, is permitted to make such an award. Section 572.32 makes no mention either way. As we recognized in *Lehigh Clay Products, Ltd. v. Iowa Department of Transportation,* under our current prac-

tice, the issue of appellate attorney fees is "frequently determined in the first instance in the district court because of the necessity for making a record. . . ." 545 N.W.2d 526, 530 n. 2 (Iowa 1996) (remanding for determination of appellate attorney fees in prior appeal and present appeal under Iowa Code section 6B.33 (1993)); *see also Federal Land Bank,* 480 N.W.2d at 70 (remanding for hearing on trial and appellate attorney fees under Iowa Code section 625.22 (1990)); *Bankers Trust,* 326 N.W.2d at 278 (remanding for hearing on trial and appellate attorney fees under Iowa Code section 625.22 (1981)).

■ Given that section 572.32 permits appellate attorney fees and given our current practice of allowing the district court to award such fees, we conclude the district court did have the authority to award appellate attorney fees in addition to trial attorney fees.

**3. Did the district court abuse its discretion in fixing the amount of attorney fees?**

The district court awarded Schaffer a total of $20,298 in trial and appellate attorney fees. The district court included in its award an allowance for a legal assistant's time at trial. This allowance totaled $785 for 11.3 hours of work. Schaffer contends the district court did not abuse its discretion in awarding these fees.

■ Legal assistant fees are included in the concept of "reasonable attorney fees." *See Landals v. George A. Rolfes Co.,* 454 N.W.2d 891, 898 (Iowa 1990) (holding that district court properly allowed recovery of fees for paralegal assistance as part of "attorney fees"). An applicant for attorney fees has the burden to prove that the services were reasonably necessary and that the charges were reasonable in amount. *Id.* at 897. The ap-

propriate factors for the district court to consider in awarding attorney fees

> include the time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, the responsibility assumed and results obtained, the standing and experience of the attorney in the profession, and the customary charges for similar service.

*Id.* Additionally, "[t]he district court must look at the whole picture and, using independent judgment with the benefit of hindsight, decide on a total fee appropriate for handling the complete case." *Id.*

 Moyer has not directed this court to any evidence demonstrating that the legal assistant's time was duplicative or otherwise unnecessary at trial. In fact, Moyer never raised this objection in Moyer's resistance to the application for attorney fees. Nor did Moyer do so during the hearing on the application. Moyer therefore did not preserve this issue for appellate review. In any event, we find the legal assistant's time was not duplicative and was indeed necessary.

 We also conclude the district court did not abuse its discretion in awarding $20,298 in total attorney fees in this case. These fees relate to the appeal in *Schaffer I* in which Schaffer prevailed. They also relate to the mechanic's lien action itself, as well as to Schaffer's defense of Moyer's unsuccessful counterclaim and its post-trial motions.

 The district court is an expert on the issue of reasonable attorney fees. *Landals,* 454 N.W.2d at 897. As such an expert, the district court had the benefit of observing the trial and the post-trial proceedings. The court was therefore "in an ideal position to judge the necessity of time and effort spent by counsel and the rationality of the relationship between the services rendered" and the causes of action and other matters involved in this case. *Lynch v. City of Des Moines,* 464 N.W.2d 236, 240 (Iowa 1990).

We have carefully reviewed Schaffer's attorney-fee affidavit. Given the fact that there were two appeals and a trial, we find the hours (177) spent by the attorneys and legal assistant were reasonably necessary and the charges were reasonable in amount. Additionally, the mechanic's lien action was successful.

Other than making conclusionary statements, Moyer has not shown how the time spent was not reasonably necessary or related to the case. Nor has Moyer even challenged the hourly rates for the lawyers and legal assistant.

 **B. Costs.** Moyer argues the district court erred in awarding costs associated with *Schaffer I* because those costs had already been taxed to Moyer by this court. Moyer further argues that the district court, over Moyer's objection, abused its discretion in awarding the cost of Schaffer's attorney's lunch expenses during trial.

Iowa Code section 625.18 provides:

> In cases of appeals from a trial court, the supreme court clerk, if judgment is rendered in the supreme court or court of appeals or both, shall make a complete bill of costs in that court which *shall be filed in the office of the clerk of the trial court and taxed with the costs in the action therein.*

(Emphasis added.)

Contrary to Moyer's contention, the emphasized language contemplates that the district court is ultimately responsible for taxing appellate costs together with the costs of the action. The record is not clear as to whether on remand in *Schaffer I* the district court entered a separate judgment for costs associated with the first appeal.

In any event, Moyer is only responsible for paying appellate costs once. We remand with directions to the clerk to ensure that Moyer is taxed only once for those costs.

The record shows that the district court reduced the amount of costs taxed to reflect a deduction for the lunch expense which Moyer contends was included in those costs. We therefore conclude Moyer's contention that the district court improperly taxed lunch costs lacks merit.

### VII. Disposition.

In sum, we reach the following conclusions. The district court correctly found that Schaffer had a valid, enforceable mechanic's lien. Additionally, the district court properly rejected Moyer's counterclaim. Finally, the district court properly awarded Schaffer trial and appellate attorney fees and costs and did not abuse its discretion on the amounts of those awards. Accordingly, we affirm and remand with directions.

**AFFIRMED AND REMANDED WITH DIRECTIONS.**

All justices concur except TERNUS, J., who concurs specially.

TERNUS, Justice (concurring specially).

I concur specially because I do not agree with the majority's decision to limit the obligation to give notice of a mechanic's lien to only those owners of record or of which the person claiming a lien has actual knowledge. It seems to me that under the record in this case, Schaffer had knowledge of sufficient facts to put him on inquiry notice of LaMasters and Hartung's ownership interest in the property. Nonetheless, I would still affirm because I do not believe that any failure by Schaffer to give LaMasters and Hartung notice affected Schaffer's rights as against Moyer.