# IN THE COURT OF APPEALS OF IOWA

No. 15-1901
Filed March 8, 2017

**KAREN M. HJELMELAND, As Executor of the**
**ESTATE OF JAN K. HJELMELAND, Deceased,**
    Plaintiff-Appellee,

**vs.**

**FRANK COLLINS (Acting As Agent for Owners),**
**CONNIE COLLINS, LINDA SCHNETZER,**
**SHIRLEEN KING, LYNNETTE SCHNETZER,**
**LINDA MERKLE, and JANE ESTES,**
    Defendants-Appellants.
_____

        Appeal from the Iowa District Court for Kossuth County, Don E. Courtney,

Judge.


        Property owners appeal from an adverse decision entered in this action for

foreclosure of a mechanic's lien.  **AFFIRMED.**



        Kelsey A. Beenken of Earl W. Hill Law Office, Britt, for appellants.

        Robert A. Dotson, Robert H. Christian, and James L. Lauer of Dotson,

Guenther, Christian & Lauer, Algona, for appellee.


        Considered by Danilson, C.J., and Vogel and Vaitheswaran, JJ.

**DANILSON, Chief Judge.**

Property owners appeal from an adverse decision entered in this action for foreclosure of a mechanic's lien, claiming the district court erred in the calculation of the amount due on a pattern-tiling project and in its award of attorney fees to the claimant. The owners also challenge the court's dismissal of their counterclaim for failure to timely complete the tiling project. Finding no reason to disturb the court's findings, we affirm.

**I. Background Facts and Proceedings.**

Jan Hjelmeland owned and operated Jan Hjelmeland Excavating and Farm Drainage. Frank Collins rented farmland from the owners of the Schnetzer Farm—Linda Schnetzer, Shirleen King, Lynnette Schnetzer, Linda Merkle, and Jane Estes. Sometime in late 2010 or early 2011, Jan and Frank (as agent for the owners) entered an oral agreement for the pattern tiling[1] of a forty-seven-acre portion of the Schnetzer Farm. Work began on the tiling project in May 2011 and was completed in June.

---

[1] Pattern tiling apparently involves a grid work of drainage ditches and pipes steering water to an outlet, which differs from a "lateral only" tiling job. Chuck Reding offered expert testimony here:

> Pattern tile is where you go in and—and—and pretty much like— like the word says, you're going to take in and you're going to have a set distance between your laterals that you are going to cover, you know, a desired acreage, and you're going to have a consistent spacing between your tiles, so you're going to go in and you're going to tile 20 acres- pattern tile 20 acres or 80 acres or the whole field instead of—tiling used to be, they would go in and they would go for the wet spots, and they would have kind of helter skelter lines running around and the whole field wasn't tiled. They tiled the wet areas and that was it.
> . . . .
> Q. So the laterals go into pipe and the pipe may go into a main or may go into another pipe that goes into main? A. Right.
> Q. There's a pattern of these things, the pattern tiling, that designed to basically take all the water from the field into the laterals eventually to the main and then gone to wherever the outlet is; right? A. Correct.

On June 24, Hjelmeland Excavating sent a bill to Frank for the tiling work done, billing the job by the tile that was installed and rock that was used, as well as the number of cuts made into a concrete pipe. The bill listed 30,700 feet of five-inch tile at $1.45 per foot ($44,515), 1360 feet of eight-inch tile at $11.50 per foot ($15,640), and 230 feet of ten-inch tile at $12.50 per foot ($2875), twenty-three tons of river rock at $21.00 per ton ($483), and fifteen cuts into concrete pipe at $75 each ($1125), for a total bill of $64,638.

On July 18, Frank sent a check to Hjelmeland for $30,550. Jan telephoned Frank in August seeking the remainder payment. Frank stated he would have to talk to his bank. Frank's attorney sent a letter to Jan stating it was Frank's position that he considered the billed amount to be excessive and claimed the parties' agreement was "for 47 acres at $650.00 per acre, or $30,550.00." The letter acknowledged there had been an agreement to "move the laterals closer together" and proffered a check in the amount of $7637.50 as full payment, contending the amended agreement would increase the project cost by twenty-five percent. The check was rejected and returned.

On October 4, 2011, Jan filed a mechanic's lien on the tiled acres, seeking a balance due of $34,088. Frank and the owners filed an answer, acknowledging the tiling contract but disputing the amount due. The answer also included a counterclaim, which alleged the tiling work was not done in a timely manner and sought losses because Frank was required to plant soybeans rather than corn.

Jan Hjelmeland died in December 2011. Karen Hjelmeland, acting as the executor of Jan's estate, brought this action to enforce a mechanic's lien against the land owners. Following a trial, the district court ruled in favor of Hjelmeland,

noting 2011 was a wet spring and though the tile was ordered and delivered to the job site in mid-April,

> [e]verything was ready to go and they were just waiting for the soil to dry out. Work commenced on May 3, 2011, and concluded on June 10, 2011. But for the rain, they would have been in and out, but because of the excessive moisture, they worked whenever they could. Frank was there daily and saw them dealing with the water. He had no complaints other than about the weather.

The court also noted Frank did not complain about the bill sent, responding only that he would check with the bank.

As for the counterclaim, the court noted:

> [Frank] testified that he had intended to plant corn on the land being tiled . . . and he had all the corn planted on his other farmland by May 6, 2011. The basis of his counterclaim is that he believes that the project should have been completed sooner than it was and it could have been done by May 15, 2011. Because of Hjelmeland Excavating and Farm Drainage's delay in laying the tile, he was affected financially. He had to plant beans on the farmland with a loss to him of $24,064, or $512 per acre for 47 acres, later reduced because of transportation, drying, and nitrogen costs that he saved to a loss of $19,729 per acre.

The court concluded Frank's "position that the contract price term was $650 per acre is unreasonable in light of the evidence of [his] conduct and the usage of trade." The court found Hjelmeland's evidence to be more credible— "Only a per[-]foot[-]installed contract price is consistent with the evidence."

The court dismissed the counterclaim, concluding "the evidence at trial reflects that Hjelmeland did timely complete the project given that the spring of 2011 was exceptionally wet" and Frank "admitted that there was no agreed contract term concerning timely performance."

The court awarded attorney fees to Hjelmeland in the amount requested ($39,874.47), finding the fees to be fair and reasonable.

**II. Scope and Standards of Review.**

Actions to enforce mechanic's liens are equitable proceedings, which we review de novo. *See Flynn Builders, L.C. v. Lande*, 814 N.W.2d 542, 545 (Iowa 2012). "In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the district court, but is not bound by them." Iowa R. App. P. 6.904(3)(g).

The counterclaim was tried as an action at law, which we review for correction of errors at law. *See* Iowa R. App. P. 6.907. In a law action, the trial court's findings of fact are binding upon us if supported by substantial evidence. Iowa R. App. P. 6.904(3)(a).

**III. Discussion.**

*A. Mechanic's lien amount due.* Upon our de novo review, we agree with the district court's findings and conclusions. The owners' position on appeal—i.e., that the agreement was for $650 per acre—is unreasonable and contrary to the evidence presented.

> The cardinal rule of contract interpretation is to determine what the intent of the parties was at the time they entered into the contract. *Walsh v. Nelson*, 622 N.W.2d 499, 503 (Iowa 2001). "Words and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight." *Fausel v. JRJ Enters., Inc.*, 603 N.W.2d 612, 618 (Iowa 1999) (quoting Restatement (Second) of Contracts § 202(1) (1979)). Another relevant rule of contract interpretation requires that "[w]herever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other and with any relevant course of performance, course of dealing, or usage of trade." Restatement (Second) of Contracts § 202(5) (1979).

*Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 436 (Iowa 2008).

There is no dispute Frank entered into an agreement with Hjelmeland Excavating for pattern tiling of the acreage. The evidence presented established that in the tiling trade, jobs are billed per foot of tile installed. Expert witness Reding testified the bill here was fair and reasonable for the job. Moreover, Reding stated the bill was less than the least amount Reding would have charged. Brian Hjelmeland, Jan's son, testified labor hours and machinery hours do not appear on the bill because hours are not relevant to the bill as the project is paid by the square foot installed.

Frank wanted the job "done right." The original decision for eighty-foot spacing for five-inch tile laterals was later changed to sixty-foot spacing because of the excessive amount of subsoil moisture on this farm. Frank observed Jan's performance on a daily basis and made no objection to the work, which was completed on June 10, 2011. Frank did not object when he received the bill, did not object when he made the initial payment on the bill, and did not object when Jan called in August to inquire about when the remainder would be paid. Productivity of this field substantially increased as a result of the tiling.

We will not disturb the court's ruling as to the amount due.

*B. Attorney fees.* The owners dispute the attorney fees award, claiming it is excessive. In a mechanic's lien action, a prevailing plaintiff may be awarded reasonable attorney fees. Iowa Code § 572.32 (2014). The award of attorney fees "is vested in the district court's broad, but not unlimited discretion." *Baumhoefener Nursery, Inc. v. A & D P'ship, II*, 618 N.W.2d 363, 368 (Iowa 2000). "The district court must look at the whole picture and, using independent judgment with the benefit of hindsight, decide on a total fee appropriate for

handling the complete case." *Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 897 (Iowa 1990).

"The district court is an expert on the issue of reasonable attorney fees." *Schaffer v. Frank Moyer Constr., Inc.*, 628 N.W.2d 11, 24 (Iowa 2001). The district court considered appropriate factors.[2] We have carefully reviewed the attorney fee claim and find the record fails to support the owners' complaints of unreasonable and duplicative charges. Although we would acknowledge the amount of the attorney fees is significant for the amount of recovery, we find no abuse of the district court's broad discretion.

*C. Counterclaim.* The owners argue they proved Frank was damaged as a result of an untimely completion of the tiling project. However, there is substantial evidence supporting the court's findings there was no agreement as to a completion date, and the work was done in a timely manner particularly in light of the weather.

*D. Appellate attorney fees.* The estate seeks an award of appellate attorney fees. While attorney fees may be awarded on appeal, *see Schaffer*, 628 N.W.2d at 24, we decline to award them here.

**AFFIRMED.**

---

[2] The court stated the fee was "reasonable based upon the time spent, the nature and extent of the service, the amount involved, the difficulty of handling and the importance of the issues in addition to the standing and expense of Plaintiff's counsel, and that the charges are customary charges for similar services." *See Schaffer*, 628 N.W.2d at 24 (stating appropriate factors include the time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, the responsibility assumed and results obtained, the standing and experience of the attorney in the profession and the customary charges for similar service).