# IN THE COURT OF APPEALS OF IOWA

No. 19-0594
Filed April 15, 2020

**NESSET, INC. d/b/a WEBER PAINT AND GLASS,**
    Plaintiff-Appellee,

**vs.**

**CHARLES JONES and GREEN DEVELOPMENT SOKOL, LLC,**
    Defendants-Appellants.
_____

Appeal from the Iowa District Court for Linn County, Mary E. Chicchelly, Judge.

A building owner appeals a district court ruling in favor of a supplier who brought an action to foreclose a mechanic's lien and for breach of contract. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**

Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellants.

Kevin J. Caster and Elizabeth J. Craig of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellee.

Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**TABOR, Presiding Judge.**

Charles Jones and his limited liability company, Green Development Sokol, appeal the district court's award of $17,708—plus interest and attorney fees—to Weber Paint and Glass. Their brief raises three issues.[1] First, Green Development complains Weber Paint misjoined its equitable action to foreclose a mechanic's lien with a breach-of-contract claim. Second, Jones alleges the district court mistakenly held him personally liable for the breach. And third, Green Development claims the court should have reduced Weber Paint's award based on deficiencies in the work the company performed.

We grant relief on one of these three claims. Green Development waived the first claim by failing to timely raise the misjoinder issue. But on the second claim, we agree the court misapplied the burden of proof in imposing personal liability on Jones. On the third issue, the court properly rejected an offset based on allegations of Weber Paint's substandard performance. Finally, we remand for the district court to award reasonable appellate attorney fees to Weber Paint, as the prevailing plaintiff.

## I.     Facts and Prior Proceedings

The Sokol building opened in 1908 as a gymnasium and served that role for one-hundred years—until the 2008 floods hit downtown Cedar Rapids. The building stood vacant until 2014. Then, Green Development started its historical

---

[1] Both Jones and Green Development are parties to the appeal. Our decision refers to Jones individually when discussing his actions and the corporate entity when otherwise appropriate.

renovation, which included constructing apartments on the upper levels and a brewery and restaurant on the first two floors.

Miles Wilson initially served as construction manager for the renovation. Wilson subcontracted with Larry Nesset, owner of Weber Paint, a Marion-based business, to do various remodeling projects for the building. Those projects included installing a metal and glass railing around the mezzanine level of the restaurant. Weber Paint also supplied the double doors for the front of the building (pictured below in a trial exhibit).



In January 2017, Wilson bowed out as the general contractor. So Jones started to communicate directly with Nesset from Weber Paint. Nesset testified,

"We dealt with Charles [Jones]. . . . He was giving us directions, he was providing the payments, he was who I was corresponding with." Nesset and Jones did not enter a written contract. But when asked about Jones's responsibilities taking over for Wilson, Nessett said, "He's the building owner, as far as I was concerned. Or the owner's representative."

Meanwhile, Jones worried he would face a $50,000 penalty on his historical tax credit investment if the building did not pass a scheduled final city inspection. Jones testified the scope of work in his contract with Wilson included "the vanilla shell for the building."[2] In turn, Wilson's subcontracting work with Weber Paint included the front doors.

Because of the time crunch, Weber Paint rushed the finishing job, leaving varnish drips on those doors. Jones bemoaned the poor work in text messages sent to Nesset sent in late January 2017. Accompanied by a photograph of the varnish, Jones wrote: "This door isn't invoice able" and "That door is a travesty." The next day Jones told Nesset that until their dispute was resolved workers from Weber Paint should "not trespass on the Sokol property."

Nesset testified:

[T]he doors weren't ready for installation. And we told Mr. Jones that, but he had arranged for an inspection and insisted that we deliver the doors and install them anyway, which we did. Normally they

---

[2] The parties did not define "vanilla shell," which is "a construction-industry term that means different things depending on the circumstances and the agreement of parties to a construction contract." *See WAF-2, LLC v. Lowry Bldg., LLC*, No. A16-0531, 2016 WL 7439090, at *2 (Minn. App. Dec. 27, 2016); *see also Minnwest Bank, M.V. v. All, Inc.*, No. A10-936, 2011 WL 781178, at *1 (Minn. App. Mar. 8, 2011) (describing "vanilla shell" as a project finished to the point at which tenants could customize the space as desired). But considering Jones's testimony, the district court found Nesset was "never made aware of the 'vanilla shell' deadline" until it became imminent.

would have been in our shop for a couple more days to have that run sanded out and finished properly.

Nesset explained he could "fix that on site" but did not "rush down and do something" because of January's inclement weather and Green Development being nearly $18,000 behind in payments to Weber Paint. At the end of January, Weber Paint filed a mechanic's lien against the property owned by Green Development for the then-unpaid amount of $33,000.[3]

In February, Wilson mediated a meeting between Jones and Nesset. After Wilson issued a $7000 partial payment to Weber Paint, the company completed its work. Jones texted Nesset: "Hey Larry, one of those two front doors I can't get to stay unlocked." After a Weber Paint employee adjusted the doors, Jones lodged no further complaint. Between March and July 2017, Jones wrote five text messages, two letters, and one email to Nesset reaffirming his intent to pay the past due invoices. None of those communications mentioned defective work.

In fact, in late March, Jones sent this upbeat message:

Larry, thank you again for your help in getting the Sokol building as far along as it is. February 15th we opened the Back Pocket Brew Pub, and 45 days later I've been able to secure another substantial amount of money. As soon as the front awning is finished . . . I can submit my historic tax credit applications and thereby have more than enough funds to pay the entire balance owed to you. . . . I will continue to work as hard as I can to get all this wrapped up and paid up as soon as possible, I hate owing money maybe as much as you hate being owed. It's the best I'm able to do right now, but again there is no realistic risk of not getting the rest.

But Jones's optimism didn't resolve the dispute. In November 2017, Weber Paint filed a two-count petition against Jones and his LLC. The first count sought

---

[3] The parties stipulated Green Development Sokol, LLC was the record title holder of the real estate.

to foreclose the mechanic's lien; the second count alleged Green Development or Jones breached their agreement to furnish labor, materials, and equipment for the Sokol project. According to Nesset, the total amount invoiced by Weber Paint to Wilson or Jones was $56,962. The payments totaled $39,254, leaving a difference of $17,708. Jones and Green Development filed an answer in January 2018, denying Weber Paint was entitled to recovery and alleging "deficiencies in the work performed."

The district court held a non-jury trial in January 2019. In a post-trial brief, Green Development alleged for the first time that Iowa Code section 572.26 barred joinder of the action to enforce the mechanic's lien and the separate count for breach of contract. In February, the court issued judgment for Weber Paint "in the amount of $17,708.33, subject interest at 10 percent, per annum, on the amount of $17,427.36 beginning on January 4, 2017, and on the amount of $280.97 beginning on January 30, 2017, plus attorney's fees in the amount of $1,391.18 plus interest at the legal rate." The court also ordered the mechanic's lien foreclosed.

Jones and Green Development moved to enlarge or reconsider, asking the court to rule on the misjoinder issue, to find Jones was not personally subject to the mechanic's lien, and to set off an amount for Weber Paint's deficient performance on the doors. The district court ruled the assertion of misjoinder was untimely. The court maintained its position that Jones was personally liable for the judgment. And it provided no set off. Jones and Green Development now appeal.

## II. Analysis

## A. Misjoinder of Actions

Green Development alleges the district court erred in allowing Weber Paint to bring an equitable action to foreclose a mechanic's lien while also suing for breach of contract. *See* Iowa Code § 572.26 (2017) ("An action to enforce a mechanic's lien shall be by equitable proceedings, and no other cause of action shall be joined therewith."). We review an interpretation of joinder rules for correction of legal error. *See Neill v. W. Inns, Inc.*, 595 N.W.2d 121, 123 (Iowa 1999).

Shortcutting that allegation, Weber Paint contends the district court correctly decided Green Development waived its right to complain about improper joinder by waiting to raise it in a post-trial motion. *See Capitol City Drywall Corp. v. C. G. Smith Constr. Co.*, 270 N.W.2d 608, 611 (Iowa 1978) (holding "misjoinder is not jurisdictional" so a defendant waives that claim when "he does not attack it by timely motion"). We agree Green Development waived any objection to misjoinder.

## B. Individual Liability

Jones next claims the district court erred in holding him personally liable for any breach of contract because he was acting in his representative capacity for Green Development Sokol, LLC. We review this claim for correction of legal error.[4]

---

[4] Jones asserts this claim was brought in equity and is reviewed de novo. Considering that this is a breach-of-contract claim, and having reviewed the record, we conclude the claim was tried at law. Thus, review is for legal error. *See* Iowa R. App. P. 6.907.

*See* Iowa R. App. P. 6.907; *Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 178 (Iowa 2010) (affirming "an action on contract is treated as one at law"). We are bound by the district court's findings of fact if supported by substantial evidence. Iowa R. App. P. 6.904(3)(a). But we are not bound by its legal conclusions. *Van Sloun*, 778 N.W.2d at 179.

At the core of Jones's claim is Iowa Code chapter 489, the Revised Uniform Limited Liability Company (LLC) Act. By its nature, a limited liability company is "an entity distinct from its members." Iowa Code § 489.104(1). And critically, a member or manager is not liable for the "debts, obligations, or other liabilities of a limited liability company, whether arising in contract, tort, or otherwise" solely because of acting as a member or manager. *See Hawkeye Land Co. v. ITC Midwest LLC*, 125 F. Supp. 3d 885, 901 (N.D. Iowa 2015) (citing Iowa Code section 489.304). Only under "exceptional circumstances" will a court "pierce the veil" of an LLC and hold a member or managers individually liable. *Id.*

When deciding whether piercing an LLC's veil is appropriate, we look for these circumstances: "(1) it is undercapitalized, (2) it is without separate books, (3) its finances are not separated from individual finances, (4) it pays an individual's obligations, (5) it is used to promote fraud or illegality, or (6) it is merely a sham." *Ne. Iowa Co–Op. v. Lindaman*, No. 13–0297, 843 N.W.2d 477, 2014 WL 69605, at *9 (Iowa Ct. App. 2014) (citing *Briggs Transp. Co., Inc. v. Starr Sales Co., Inc.*, 262 N.W.2d 805, 810 (Iowa 1978)); *see also Cemen Tech., Inc. v. Three D. Indus., L.L.C.*, 753 N.W.2d 1, 6 (Iowa 2008) (putting forth six-step analysis for piercing an LLC's veil). But this list is not exhaustive. *Boyd v. Boyd & Boyd, Inc.*,

386 N.W.2d 540, 544 (Iowa Ct. App. 1986) (emphasizing "no precise formula is available to predict when a court should disregard the corporate entity").

Key to our analysis is deciding who has the burden on personal liability. The district court placed the onus on Jones because he pleaded as an affirmative defense: "Any contractual relationship between [Weber Paint], as a contractor or subcontractor would have been with Green Development, as Charles Jones is merely a member and manager of Green Development." The court then held Jones did not prove his affirmative defense. The court found Jones repeatedly promised to pay Nessett by text or in letters not on LLC letterhead and did not include his title within the LLC.

In contrast, Jones contends the burden rests with Weber Paint as the party alleging personal liability. *See Cemen Tech. Inc.*, 753 N.W.2d at 6 ("The burden is on the party seeking to pierce the corporate veil to show the exceptional circumstances required." (quoting *In re Marriage of Ballstaedt*, 606 N.W.2d 345, 349 (Iowa 2000)). He notes Weber Paint alleged in its petition that "Green Development and/or Charles Jones breached the Agreement." Jones asserts his answer clarified the business structure, without shifting the burden to him. Even Weber Paint admits, in the alternative, that proving Jones's personal liability may be an element of its case in chief. Under that scenario, Weber Paint maintains it showed Jones should be liable in his individual capacity for breach of contract.

Like Jones, we read the case law as placing the burden on Weber Paint, as plaintiff, to show exceptional circumstances exist to warrant imposing personal liability on Jones, as a member of the LLC that owns the Sokol building. *See Mac Chambers Co., Inc. v. Iowa Tae Kwon Do Acad., Inc.*, 412 N.W.2d 593, 598 (Iowa

1987). And contrary to Weber Paint's assertion on appeal, it did not show such extraordinary circumstances existed. At trial, Nesset acknowledged Jones acted as the "owner's representative" when he took over the general contracting duties from Wilson. When Jones made partial payments to Weber Paint, he did so on the Green Development account. Weber Paint offered no evidence the LLC was undercapitalized, lacked separate books or finances, was promoting any fraud or illegality, or was a sham.

At most, Weber Paint asserts Jones's promises to pay were not made "solely" in his representative capacity as a member or manager of the LLC because they were not on letterhead and Jones referred to himself in the "first-person." This assertion does not justify a court in veil piercing. *See HOK Sport, Inc. v. FC Des Moines, L.C.*, 495 F.3d 927, 935 (8th Cir. 2007) (explain that disregarding entity's corporate form under "remedy of piercing the corporate veil is an extraordinary measure that should be reserved for exceptional circumstances"). Nothing about the casual nature of Jones's text messages undermines the financial soundness or legitimacy of his LLC structure.

On this issue, the district assigned the burden of proof to the wrong party. We are not bound by that legal conclusion. When the burden is placed on Weber Paint, the record does not support the district court's conclusion that Jones is individually liable for the breach of contract. We reverse that aspect of the ruling.

## C. Reduction in Award

Green Development next argues the district court should have reduced Weber Paint's judgment based on "undisputed deficiencies in the work performed." Like the previous issue, we review this contract claim for legal error. *See Van*

*Sloun*, 778 N.W.2d at 178. We are bound by the district court's findings of fact if supported by substantial evidence. *Id.* at 179.

To support its argument, Green Development points to a passage in the district court ruling discussing the parties' dispute over the doors. But the district court's factual findings do not help Green Development. As the court explained:

> [T]he evidence at trial shows that Weber Paint took actions to correct any deficiencies or imperfections in its work that were noted by Jones as the project progressed, including remedying the function of the doors. Jones admitted at trial that his primary objection ultimately was that Weber Paint never came back to properly finish the cosmetics of the double doors.

The court also found Jones's statements that "he never intended to pay for the doors" lack credibility. The court determined "Jones's own delay in ordering the doors ultimately forced the rush of their installation when not completely finished." From these findings, the court rejected the request for an offset. We find substantial evidence in the record supporting the district court's rejection of Green Development's request for a reduction in the judgment.

### D. Appellate Attorney Fees

As a final measure, we address Weber Paint's request for appellate attorney fees. Weber Paint cites Iowa Code section 572.32: "In a court action to enforce a mechanic's lien, a prevailing plaintiff may be awarded reasonable attorney fees." That statute also "contemplates the award of appellate attorney fees." *Schaffer v. Frank Moyer Constr., Inc.*, 628 N.W.2d 11, 23 (Iowa 2001).

The district court exercised its discretion to award attorney fees to Weber Paint as the "prevailing plaintiff" at the trial level. *See Tri-State Agri Corp. v. Clasing*, No. 00-1344, 2001 WL 1658852, at *6 (Iowa App. Dec. 28, 2001) (noting

change in current version of statute to "may" from "shall").  Because Weber Paint also succeeded on appeal (except for Jones's claim he was not personally liable for the breach of contract), we find an award of appellate fees is appropriate.  We remand for the district court to decide the extent of that award.  *See Schaffer*, 628 N.W.2d at 24 (recognizing need to make a record to determine reasonable amount of appellate fees).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**