# IN THE COURT OF APPEALS OF IOWA

No. 21-1746
Filed August 17, 2022

**KARA LYNN REDENIUS,**
    Plaintiff-Appellee,

**vs.**

**RYAN ALLEN REDENIUS,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Wright County, Gregg Rosenbladt, Judge.

Ryan Redenius appeals the modification and extension of a final domestic abuse protective order. **AFFIRMED.**

Dani L. Eisentrager of Eisentrager Law Office, Eagle Grove, for appellant.

Scott L. Bandstra of The Bandstra Law Firm, P.C., Des Moines, for appellee.

Considered by Bower, C.J., and Greer and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Ryan Redenius appeals the modification and extension of a final domestic abuse protective order issued under Iowa Code chapter 236 (2020). The order protects Kara Redenius, Ryan's estranged wife, by prohibiting Ryan from communicating with her outside of text messages and phone calls "or as otherwise mutually agreed." It also requires Ryan to stay away from Kara except when attending the children's events or activities.

Thirteen days before the protective order was to expire, Kara moved to extend it another year. She also requested that the court modify the location of visitation exchanges of their three children to occur at a police department. The district court granted the extension and modification. Ryan appeals.

Because chapter 236 proceedings are heard in equity, our review is de novo. *See Knight v. Knight*, 525 N.W.2d 841, 843 (Iowa 1994). We examine both the law and the facts, and we adjudicate anew those issues properly preserved and presented for appellate review. *See Wilker v. Wilker*, 630 N.W.2d 590, 594 (Iowa 2001). Although we are not bound by the district court's fact findings, we give them weight, especially when they involve witness credibility. *See* Iowa R. App. P. 6.904(3)(g).

Section 236.5(2) allows the court to extend the protective order if it "finds that the defendant continues to pose a threat to the safety of the victim." "The text of the statute indicates this is an objective inquiry rather than a subjective inquiry." *Wendt v. Mead*, No. 16-0928, 2017 WL 510972, at *2 (Iowa Ct. App. Feb. 8, 2017). "[U]nprovoked fear" alone is not enough. *Clark v. Pauk*, No. 14-0575, 2014 WL 6682397,at *3 (Iowa Ct. App. Nov. 26, 2014)

The district court found that Kara met her burden to modify and extend the order by showing Ryan threatened her. The incident occurred while Kara was picking the children up from a visit two days before she requested the extension. Kara testified that when she arrived at Ryan's residence to pick up the children, Ryan came out and began to knock on her window. Not wanting a confrontation, Kara stared ahead and attempted to ignore him. Ryan then began to knock harder on the window, which Kara also ignored.

> Q. Well, what did Ryan do? A. He walked around to the passenger side of the car and pulled the passenger door open aggressively.
> Q. And what, if anything, did you say to Ryan when he opened your door without your permission or consent? A. I said, "Don't touch my car. Get back."
> Q. And . . . did Ryan comply with your request for him not to open your door? A. No.
> Q. What did he do? A. He yelled, "Fuck you," at me. He leaned in the car over the top of [one of our children], pointed his finger at me, and told me I was a terrible mother.
> Q. In front of two of your three children? A. Yes.
> Q. And on the volume range where one is a whisper and ten is screaming as loud as you can[,] . . . what was his level as he's pointing his finger at you? A. An eight or a nine.
> Q. How did you feel when your husband is pointing his finger at you and screaming at you, "Fuck you. You're a terrible mother"? A. I was terrified.

Kara testified that she felt concerned for her safety and the safety of their children, who appeared afraid. When Ryan went back inside his house, Kara called the sheriff's department because she felt afraid and threatened. She reported the same scenario to law enforcement that she stated in her testimony. Kara also alleges that while she was on the phone with dispatch, Ryan came out again and screamed that he would turn her in for trespassing if she did not leave immediately. Ryan and his girlfriend denied the incident occurred as Kara described.

Kara showed that Ryan made what could objectively be considered a threat by opening the door to her vehicle and yelling while pointing a finger at her. Although Ryan disputes Kara's version of events, the district court found that "[o]verall, . . . [her] version of the incident is more credible, and the Court believes the incident occurred more or less as she described." Because of the district court's ability to view the parties, we defer to this finding. We also note that Kara's account is backed by her contemporaneous report to law enforcement. Because Kara met her burden of showing Ryan continued to pose a safety threat, we affirm the modification and extension of the protective order.

Both parties request an award of appellate attorney fees. Iowa Code section 236.5(4) states, "The court may order that the defendant pay the plaintiff's attorney fees and court costs." As the defendant, the statute does not authorize an award of Ryan's attorney fees. *See, e.g.*, *Holz v. Holz*, No. 15-0149, 2015 WL 8366167, at *1 (Iowa Ct. App. Dec. 9, 2015) ("Iowa Code chapter 236 does not authorize payment of fees by the plaintiff in a domestic abuse action."). But because the statute allows an award of attorney fees to Kara as the plaintiff, we may award her appellate attorney fees. *See Schaffer v. Frank Moyer Constr. Inc.*, 628 N.W.2d 11, 23 (Iowa 2001). In deciding whether to award appellate attorney fees, "we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal," as well as "whether a party was obligated to defend the district court's decision." *Christy v. Lenz*, 878 N.W.2d 461, 469 (Iowa Ct. App. 2016) (citation omitted).

Kara submitted an affidavit of appellate attorney fees showing she incurred $2102 in attorney fees on appeal. Because Kara successfully defended the district

court's order on appeal, she may be awarded appellate attorney fees. But the record is incomplete as it does not establish Kara's need or Ryan's ability to pay. We therefore remand to the district court for further proceedings to determine the amount of appellate attorney fees to award Kara. *See Schaffer*, 628 N.W.2d at 23 ("[U]nder our current practice, the issue of appellate attorney fees is 'frequently determined in the first instance in the district court because of the necessity for making a record.'" (citation omitted)).

**AFFIRMED.**