# IN THE COURT OF APPEALS OF IOWA

No. 19-0116
Filed May 12, 2021

**MARVIN SWAN,**
Plaintiff-Appellee,

**vs.**

**ROBERT LEE JACKSON,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Wayne County, Patrick W. Greenwood, Judge.

Robert Jackson appeals the district court's order foreclosing a mechanic's lien in favor of Marvin Swan. **AFFIRMED.**

Bob Jackson, Promise City, self-represented appellant.

Verle W. Norris, Corydon, for appellee.

Considered by Vaitheswaran, P.J., Greer, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**VAITHESWARAN, Presiding Judge.**

Robert Jackson appeals a trial court order foreclosing a mechanic's lien in favor of Marvin Swan. Jackson contends the court (1) should not have excluded certain exhibits, (2) acted inequitably in concluding Swan substantially performed the contract, and (3) should not have awarded trial attorney fees.

## I.    *Background Facts and Proceedings*

Jackson was a farmer who owned property in Wayne County, Iowa. Jackson signed a conservation program contract with the Natural Resources Conservation Service (NRCS) of the United States Department of Agriculture (USDA). He was to have two ponds constructed on his property as part of the "Lower South Fork Chariton River Project." The NRCS was to pay him $38,684 for his participation in the program.

Jackson hired Swan to construct the ponds, referred to as the large structure and the small structure. After Swan completed the work, he submitted two invoices: $31,855 for the large structure and $14,551 for the small structure. At Jackson's request, Swan later completed additional work, including the construction of a fence crossing and a building site. Swan invoiced that work at $4300. Jackson submitted a payment application to the USDA.

The USDA paid Jackson $26,417.22. Jackson, in turn, paid Swan $9500, $5000, and a $1000 "cash payment," leaving an outstanding balance of $35,201.

Swan attempted but failed to collect the balance. He filed a mechanic's lien, followed by a petition to foreclose the lien. The petition sought $46,135.97 and

reasonable attorney fees.[1]  Jackson filed an answer and counterclaim, alleging Swan's "construction of the pond was negligent."  After a bench trial, the district court foreclosed the mechanic's lien in the amount of $35,201 and ordered Jackson to pay Swan trial attorney fees of $70,164.71.  The court denied Jackson's posttrial motion.  This appeal followed.

## II.    Exclusion of Evidence

Swan engaged in pretrial discovery.  Jackson failed to cooperate, forcing Swan to move for an order compelling compliance and for sanctions.  Years passed.  Eventually, Jackson answered interrogatories and provided some documents.  On November 14, 2017, approximately two months after a scheduled trial date and two months before a rescheduled trial date, Jackson gave Swan a zip drive containing 2265 files and 49 folders.  Swan moved to "exclude all exhibits and discovery materials produced after" the originally scheduled trial date.  On December 12, 2017, the district court imposed discovery sanctions as follows:

> [T]he discovery materials and/or proposed exhibits transmitted to [Swan] by [Jackson] on November 14, 2017, are excluded from use at trial due to the fact that they were not disclosed until well after the Court's extended discovery deadline.  Any documents or proposed exhibits transmitted to [Swan] by [Jackson] on or before August 29, 2017, are not excluded.

Swan subsequently filed two motions to exclude exhibits he alleged were in violation of the December 12, 2017 order.  The district court granted the motions.

Jackson contends the district court "incorrectly interpreted and incorrectly applied [the December 12, 2017] order excluding documents throughout trial."  In his view, the judge who signed the December 12, 2017 order was "misled" into

---

[1] According to Swan, the larger amount did not reflect payments Jackson made on the outstanding balance after the mechanic's lien was filed.

believing he violated a trial scheduling order, and the trial court selectively enforced the December 12, 2017 order against him, resulting in "a decidedly unfair trial." In response, Swan exhorts us not to address the issue on the ground that "Jackson has made no attempt to pinpoint any evidence, exhibit, or any objection to such evidence or exhibit, the exclusion of such which was error." We elect to bypass Swan's waiver concern and proceed to the merits. Our review of the December 12, 2017 order, as well as the trial court's implementation of that order, is for an abuse of discretion. *See City of Des Moines v. Ogden*, 909 N.W.2d 417, 422–23 (Iowa 2018) ("We 'review decisions on sanctions for violation of discovery for an abuse of discretion.' Likewise, we review evidentiary rulings for an abuse of discretion." (citations omitted)).

Iowa Rule of Civil Procedure 1.517(3)(a) authorizes exclusion of documents not disclosed in discovery "unless the failure was substantially justified or is harmless." Swan filed his petition in 2015 and served his first request for production of documents within three months. Two and one-half years later, Swan was still attempting to obtain compliance. One trial date came and went. Another was on the horizon. Jackson's only justification for his delayed production of documents in November 2017 was that they were generated after Swan took his deposition in August 2017. He asserted Swan had "more than adequate time to review the same" before the rescheduled trial date. Swan countered that the new documents were unmarked and intermingled with old ones and the sheer volume produced at that "late juncture" and "after the case ha[d] previously been set for trial" rendered the production "highly prejudicial."

Jackson's noncompliance with discovery requests for a period of years supports the district court's exclusionary order. Additionally, Jackson's belatedly-produced zip

drive failed to identify documents arguably responsive to his deposition testimony versus documents generally responsive to prior requests for production. The district court's December 12, 2017 order staked out a middle ground, excluding only those documents disclosed after the originally scheduled trial date while permitting those disclosed before. We discern no abuse of discretion in the court's order.

We turn to the trial court's enforcement of the December 12, 2017 order. Throughout the thirteen-day trial, the court afforded Jackson the chance to explain why he believed certain documents should not be excluded. The following comments are illustrative:

> The Court's difficulty is that the exhibits are so numerous and voluminous that it's difficult to know, not having participated in the discovery process, what was timely provided and what was not.
> To the best of his ability, I believe [Swan's counsel] has provided the matrix or spreadsheet to show what he asserts was not provided. That was prepared before the filings from two days ago. It's my intent to exclude those unless you can establish that you indeed did comply with the prior discovery rulings.

Jackson often could not make a showing that he provided Swan with the documents. His inability to do so was a problem of his own making. As the court stated, Jackson "created" "[d]iscovery and evidentiary issues"—a "theme [that] persisted through the last day of trial." The court noted:

> Throughout trial, Jackson continued to file with the Court dozens of new proposed exhibits not previously produced in discovery. In some instances, Jackson simply remarked exhibits the Court had previously deemed inadmissible as untimely. Jackson then attempted to admit the exhibits a second time. The cumulative, repetitive, disorganized and untimely nature of many of Jackson's exhibits caused the Court (and consequently Swan's counsel) to spend considerable time during trial reviewing the admissibility of those documents. Jackson's persistent attempts to circumvent the Court's discovery rulings and his inefficient and inaccurate presentation of exhibits and testimony was the direct cause of the need to repeatedly recess and resume this trial over non-sequential days. Jackson's disorganization caused repeated delays during trial.

Ultimately, Jackson's unwillingness to accept the assistance and counsel of his attorney was the root cause for the unnecessary prolongation of a relatively straightforward action into a 13-day trial.

Contrary to Jackson's assertion, the court's rulings and the trial as a whole were neither one-sided nor unfair. We discern no abuse of discretion in the trial court's implementation and enforcement of the December 12, 2017 document-exclusion order.

### III. *Substantial Performance*

Iowa Code chapter 572 (2015) governs mechanics' liens. "A mechanic's lien is a claim against real property for the value of labor and materials furnished by the claimant in improvement of the property." *Winger Contracting Co. v. Cargill, Inc.*, 926 N.W.2d 526, 535 (Iowa 2019) (*citing* Roger W. Stone, *Mechanic's Liens in Iowa*, 30 Drake L. Rev. 39, 41 (1980)). To successfully enforce a mechanic's lien, a contractor must show substantial performance of the contract. *See id.*

> Substantial performance allows only omissions or deviations from the contract that are inadvertent or unintentional, not the result of bad faith, do not impair the structure as a whole, are remedial without doing material damages to the other portions of the building, and may be compensated for through deductions in the contract price.

*Nepstad Custom Homes Co. v. Krull*, 527 N.W.2d 402, 406 (Iowa Ct. App. 1994).

Jackson contends the district court acted inequitably in determining that Swan substantially performed the contract. He points to the testimony of his expert witness Jim Warner and asserts it was "clear" that Warner "found both ponds to be substandard in build and with major deficiencies which were due to construction error."

The trial court acknowledged that Warner found several problems with both structures. As an example, the court cited Warner's findings of "seepage on the

back slope of the dam, rough and irregular emergency spillway slopes, a missing trash rack for the spillway pipe, and erosion at the outlet of the spillway." At the same time, the court cited Warner's testimony "that he did not expect either structure to fail." The court also cited Jackson's admission that he "corrected none" of the perceived deficiencies "in the nearly five-year period between completion of Swan's work and the trial." The court found, "If either structure was completed contrary to NRCS plans and specification, such deficiency is more likely attributable to mistakes made by NRCS personnel as opposed to Swan." The court determined Swan substantially performed the contract, stating:

> Jackson's payments of $14,500 toward the contract price is evidence of his belief that Swan delivered no less than substantial performance. If there were omissions or deviations in Swan's work, such results were inadvertent and unintentional and not the product of bad faith. Swan's testimony and supporting documentation that both Jackson and NRCS approved of the structures as completed, coupled with the partial payments and Warner's acknowledgment that he expected neither structure to fail, is sufficient to carry Swan's burden.

On our de novo review, we agree with the district court's findings and determination. Warner—a consulting engineer who previously interned and worked for NRCS—did indeed find deficiencies in the two structures. Of particular note was the seepage in the larger dam. Seepage, Warner said, compromises the integrity of a dam. However, Warner could not pinpoint the cause of the seepage. Although his supplemental report stated, "The most logical cause of the seeps seems to be some common construction deficiency," he testified, "It's hard to determine exactly why the seeps are occurring without doing some excavation or some soils investigation, extensive investigations by borings from the surface." He later reiterated that he did not know why the large structure leaked. As for

problems with the spillway, Warner stated, "[T]he emergency spillway is more of a design issue, that the emergency spillway discharge was allowed to flow onto an area that had been disturbed, which is not standard design, practice, for ponds."

Warner conceded the Wayne County NRCS office was responsible for the specifications and designs of these structures as well as certification and approval of the projects. In one exchange, he stated the small structure "wasn't finished as it was supposed to be" and "[i]t would be up to NRCS, who designed these." In another, he testified the emergency spillway was not constructed as designed but the Wayne County NRCS officer would have been in the best position to determine whether the construction of the structure met their plans and specifications.

While Jackson laid the blame for the defects at Swan's feet, he testified he "depend[ed] on the NRCS to make sure things [were] going right." He said he "would hope they would come out" to inspect the structures during construction. When asked if he "clearly understood when [he] commenced these projects . . . that the NRCS was going to be responsible for a final inspection and approval of [the] projects," he answered, "Yes." And Jackson acknowledged he "didn't raise any issues with [NRCS] regarding [the] structures at the time of final inspection and approval." He also agreed his practice approval payment application contained an acknowledgment that "the practices had been performed and met program requirements."

Swan categorically stated NRCS personnel were "out there several times" during construction of the structures. When he found a problem during his excavation of the core trench, he said "[t]hey sent out two technicians." According to Swan, Jackson was present when they came out. The technicians supervised

and approved additional work he performed and remained on site "until it was done." Notably, the trial court found Swan to be a credible witness. We give weight to this credibility finding. *See Flynn Builders*, *L.C v. Lande*, 814 N.W.2d 542, 545 (Iowa 2012) ("[I]n mechanic's lien cases, 'involving as they do numerous charges and counter charges which depend entirely on the credibility of the parties, we have frequently held the trial court is in a more advantageous position than we to put credence where it belongs.'" (quoting *McDonald v. Welch*, 176 N.W.2d 846, 849 (Iowa 1970))); *Constructive Consultants*, *Inc. v. Banwart*, No. 12-1011, 2013 WL 988637, at *4 (Iowa Ct. App. Mar. 13, 2013) ("The district court was in the best position to determine credibility . . . .").

We conclude the district court acted equitably in determining Swan substantially performed the contract. We affirm foreclosure of the mechanic's lien in the amount specified by the court.

## IV.    Attorney Fees

"In a court action to enforce a mechanic's lien, a prevailing plaintiff may be awarded reasonable attorney fees." Iowa Code § 572.32(1). "The award of attorney fees 'is vested in the district court's broad, but not unlimited discretion.'" *Chumbley v. Lyman Enters.*, *L.C.*, No. 18-0379, 2019 WL 2153098, at *2 (Iowa Ct. App. May 15, 2019) (quoting *Standard Water Control Sys.*, *Inc. v. Jones*, 888 N.W.2d 673, 679 (Iowa Ct. App. 2016)).

Jackson asserts the trial court should not have ordered him to pay Swan's attorney fees in light of what he contends was an inaccurate figure identified in his mechanic's lien. As noted, Swan explained the discrepancy. That discrepancy

does not warrant elimination of the attorney-fee award. We discern no abuse of discretion in the trial court's decision to award attorney fees.[2]

We turn to the amount of the award. "The district court is an expert on the issue of reasonable attorney fees." *Schaffer v. Frank Moyer Constr., Inc.*, 628 N.W.2d 11, 24 (Iowa 2001).

> The appropriate factors for the district court to consider in awarding attorney fees
> > include the time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, the responsibility assumed and results obtained, the standing and experience of the attorney in the profession, and the customary charges for similar service.

*Id.* at 23–24. The trial court carefully considered Swan's attorney-fee request and reduced a portion of the request relating to charges for a legal assistant's work. We discern no abuse of discretion in the court's analysis. We affirm the amount of the attorney-fee award.

**AFFIRMED.**

---

[2] We recognize the court stated an award was mandatory. Whether to award attorney fees is now a discretionary decision. *See Tri-State Agri Corp. v. Clasing,* No. 00-1344, 2001 WL 1658852, at *6 (Iowa Ct. App. Dec. 28, 2001) ("[T]he change [in the statute] from 'shall' be awarded reasonable attorney fees to 'may' be awarded reasonable attorney fees appears to make an award discretionary rather than mandatory."). Because this issue was not raised, we decline to address it. *See Feld v. Borkowski*, 790 N.W.2d 72, 78 (Iowa 2010) ("Our obligation on appeal is to decide the case within the framework of the issues raised by the parties. Consequently, we do no more and no less." (internal citation omitted)); *cf. Chumbley*, 2019 WL 2153098, at *2 (noting that party raised the district court's citation to an opinion based on an earlier version of section 572.32).