# IN THE COURT OF APPEALS OF IOWA

_____

No. 25-0497
Filed June 10, 2026

_____

**United Properties Investment Company, L.C. and Echo Valley Investment Company, L.C.,**
Plaintiffs–Appellees/Cross-Appellants,

v.

**Bryan Kratzer and Becki Moore,**
Defendants–Appellants/Cross-Appellees,

and

**Maxwell Midwest Holding Company, LLC,**
Defendant/Cross-Appellee.

_____

Appeal from the Iowa District Court for Warren County,
The Honorable Terry Rickers, Judge.

_____

**AFFIRMED ON APPEAL IN PART AND REMANDED TO CONSIDER TRIAL ATTORNEY FEES; AFFIRMED ON CROSS APPEAL**

_____

Alan R. Ostergren (argued) of Alan R. Ostergren, PC, Des Moines, attorney for appellants/cross-appellees.

William M. Reasoner (argued) of Dickinson, Bradshaw, Fowler & Hagen, P.C., Des Moines, attorney for appellees/cross-appellants.

Diana Kenney (argued) and Kate M. Simon of Dentons Davis Brown PC, Ames, attorneys for cross-appellee Maxwell Midwest Holding Company, LLC.

———————————

Heard at oral argument
by Buller, P.J., Sandy, J., and Doyle, S.J.
Opinion by Buller, J.

**BULLER, Presiding Judge.**

Two homeowners appeal from a ruling finding they violated restrictive covenants in the construction of an outbuilding[1] in their yard abutting a golf course. They also appeal a $100-per-day payment and trial-attorney-fee award flowing from the covenants. The developers cross-appeal dismissal of the legal title holder from the suit and request appellate attorney fees. Because we are a court of correction of errors at law and limited to deciding preserved errors, we affirm the ruling. We reverse the trial-attorney-fees award in part and remand with directions, and we separately award appellate attorney fees.

## BACKGROUND FACTS AND PROCEEDINGS

Bryan Kratzer and Becki Moore are homeowners in The Ridge at Echo Valley development in Norwalk, where their home abuts the Echo Valley golf course. The development and the golf course are interrelated, with the former owned by United Properties Investment Company, L.C. and the latter by Echo Valley Investment Company, L.C. (collectively "UPI"). Kratzer and Moore contracted to purchase their home from Maxwell Midwest Properties, LLC (Maxwell) in April 2020, which continues to hold legal title. The development properties are bound by a Declaration of Covenants, Conditions, Restrictions and Easements (the covenants) aimed at maintaining the development and golf course's property value and desirability.

Many of the covenants require homeowners to receive express approval for "any and all improvements" from the development's

---

[1] There is debate in the record about what exactly to call this structure; attorneys and litigants used terms including "shed," "bar structure," and "saloon."

architectural review committee (ARC) created under the covenants' Article 6.02. The ARC has a quorum requirement of three members. The ARC is also authorized to consult architects, engineers, urban designers, and attorneys as necessary to fulfill its duties. Scott McMurray is the manager of development construction and special projects for UPI. McMurray, in practice, runs the ARC along with fellow committee member (and United Properties owner) Michael Coppola. Depending on the proposal, the ARC will sometimes involve outside engineering or landscape firms to review projects.

Among other things, homeowners in the development are restricted from:

- Constructing temporary structures lacking permanent foundation except for specified social functions;

- Constructing any improvements unless plans and specifications are submitted and approved by the ARC;

- Violating applicable set-back limits when constructing any improvement;

- Displaying signs or advertisements without express permission of the ARC; and

- Distracting or diminishing the playing quality at the golf course.

The plat map has a fifty-foot building set-back requirement for any property abutting the golf course. Otherwise, the rear building setback is thirty-five feet. The covenants also empower UPI to charge "reasonable monetary fines which shall constitute an equitable charge and a continuing lien upon the

Lot" or "move for any injunction which the Board deems appropriate and reasonable" to enforce any property owner to comply under Article 7.02.

In July 2021, Kratzer displayed political signage at his property. McMurray informed him that his signs were prohibited under the covenants, and Kratzer took the signage down within a week or two. McMurray testified that, between 2021 and trial, Kratzer periodically displayed political flags and signage with profanity and at least arguably threatening overtones, such as a Confederate battle flag with a Colt AR-15 reading "Come and Take It." In August 2022, McMurray discovered that Kratzer was building a structure behind his property facing the golf cart path. Shortly after learning about the construction, McMurray informed Kratzer that the outbuilding did not comply with the covenants because it was too close to the golf course and the planned structure needed to be submitted to the ARC for approval. Kratzer, despite being repeatedly informed of the violations and receiving a cease-and-desist letter from UPI's attorney, continued to construct the outbuilding and declined to contact McMurray or otherwise submit his construction to the ARC for approval.

In April 2023, UPI filed suit against Kratzer and Moore over the violations and their continued work on the outbuilding. UPI also sued Maxwell as the legal title holder, having previously copied Maxwell on the cease-and-desist letter to Kratzer. UPI also encouraged Maxwell to influence Kratzer to comply with the covenants, warning that its interest as "fee holder" may be implicated. While the court case was pending, Kratzer completed the outbuilding. At some point, Kratzer and Moore erected a separate pre-cut shed on their property—another alleged violation of the covenants.

5

In late April 2024, after apparently receiving documents from UPI, Kratzer put up more political signage and flags, some of which was vulgar or profane—a "Fuck Biden" flag, a "Piss on Biden" sign, and a spray-painted sign reading "FU E.V.[2] NOT TEARING THIS DOWN" behind his property and facing the golf course. The golf course received complaints from its members, and UPI avoided scheduling tournament play or touring prospective members around the golf holes near Kratzer and Moore's property because of the signage. On May 10, 2024, UPI's attorney sent Kratzer a letter informing him that it would be levying $1,000 per day for the ongoing violations relating to the outbuilding and the signage. Afterward, Kratzer removed some but not all the signage.

A bench trial was held in June 2024. UPI offered photo evidence of Kratzer and Moore's fifty-foot setback violation but did not present a traditional land survey. In his testimony, Kratzer admitted that he measured the set-back distance and found that it was twenty feet on one side and twenty-seven feet on the other. He claimed that McMurray gave him verbal permission to build so long as the outbuilding was set back at least eighteen to twenty feet. McMurray testified that his comments were misconstrued, and the district court found McMurray more credible than Kratzer.

The court found that Kratzer and Moore violated multiple covenants. The court also ordered Kratzer and Moore to pay UPI $100 per day effective May 10, 2024, with all fees aggregated as an equitable charge and continuing lien until the property was in full compliance; ordered both the outbuilding and other infringing shed to be deconstructed; and ordered Kratzer and Moore to pay UPI's reasonable attorney fees. The district court also granted

---

[2] The court below understood this to mean "FUCK YOU ECHO VALLEY," and we also find that to be the natural reading.

Maxwell's motion to be dismissed from the case, finding that Maxwell lacked any possessory interest in the property as a contract vendee.

Kratzer and Moore appeal, and UPI cross-appeals.

## STANDARD OF REVIEW

This case was tried in equity. Our review is de novo, though we give weight to the district court's fact findings. Iowa R. App. P. 6.907; *Brede v. Koop*, 706 N.W.2d 824, 826 (Iowa 2005). And, "because the district court had the opportunity to assess the credibility of the witnesses, we do give deference to those findings." *State v. Bower*, 725 N.W.2d 435, 440 (Iowa 2006) (citation omitted).

## DISCUSSION

Kratzer and Moore make several challenges. They argue the ARC lacked a quorum, making it impossible for them to comply with the covenants and thus excusing their obligation to get approval before construction. Next, they argue that UPI failed to prove Kratzer and Moore committed a set-back violation. Then, they argue the district court exceeded its equitable authority by ordering them to pay UPI $100 per day until Kratzer and Moore complied with the covenants. Finally, Kratzer and Moore dispute the court's award of attorney fees. Separately, UPI cross-appeals the district court's dismissal of Maxwell from the case and requests appellate attorney fees under the covenants.

We take each party's arguments in turn, considering error preservation along the way.

## I. Doctrines of Impossibility and Impracticality

On appeal, Kratzer and Moore argue they weren't obligated to seek approval of the ARC before constructing the outbuilding because the committee lacked a quorum of members. They argue that it was impossible or impractical to comply, even if they had tried.

But that argument was not developed below. Our error-preservation rules require that, to preserve error on an issue, a party must raise the issue and obtain a ruling on it from the district court. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). And that did not happen here, as the court below noted when it observed: "Although Article 6.03 of the Covenants requires a minimum of three persons serving on the Committee, no party raised that issue during trial." We agree. We find the issue was not raised and decided, implicitly or explicitly, and we do not consider this issue further.

## II. Sufficiency of the Evidence

Kratzer and Moore argued that UPI failed to prove the outbuilding construction violated the set-back provision. Specifically, they argue that the applicable set-back distance was twenty feet—not fifty, as argued and accepted by the district court below.

To support their contention about the set-back distance, Kratzer and Moore point to allegedly irregular set-back lines on the plat map and suggest that this irregularity indicates not all lot set-back lines abutting the golf course require fifty feet, only those near a golf hole—meaning the outbuilding should be subject to a thirty-five-foot rear setback. Kratzer and Moore also argue that a use-restriction exception requires set-back requirements for accessory buildings to be set back only twenty feet. But they failed to make

this contention below, and it is another unpreserved issue we cannot reach. *See Meier*, 641 N.W.2d at 537.

The district court accepted the uncontradicted testimony of McMurray that the setback abutting the golf course is fifty feet. And, even if we considered the argument, the exception Kratzer and Moore rely on is limited:

> "In-ground" pools shall be permitted provided that they have proper Municipal Code fencing and are set back not less than 20 feet from the Golf Course property. . . . Detached garages (in addition to the required three car attached garage) shall be permitted provided they are in harmony with the main dwelling and are set back not less than 20 feet from the Golf Course property.

This provision doesn't include a general exception to the set-back requirements for all accessory buildings, only detached garages and in-ground swimming pools. Even if we credited Kratzer and Moore's argument the thirty-five-foot set-back applied, Kratzer admitted—and the court credited—that the outbuilding was exactly twenty feet from the lot line. On our de novo review, we find UPI proved Kratzer and Moore violated the set-back covenant.

### III.    $100-per-day payment

Kratzer and Moore next argue that the district court exceeded its authority by ordering a $100-per-day payment from Kratzer and Moore to UPI under the covenants until Kratzer and Moore are fully compliant. Kratzer and Moore argue that a district court sitting in equity cannot order a penalty untethered to a loss suffered by the breach, and that the covenants' "reasonable monetary fine" language is an unenforceable penalty.

Kratzer and Moore correctly admit error was not preserved on this issue at trial or through a motion under Iowa Rule of Civil Procedure 1.904(2). They instead claim that error preservation is inapplicable because "the illegality of the fine" constitutes "a void sentence." In support, Kratzer and Moore cite contempt case law: *Wilson v. Fenton*, 312 N.W.2d 524, 528–29, *overruled on other grounds by Ervin v. Iowa Dist. Ct.*, 495 N.W.3d 742, 745 (Iowa 1993). We find that precedent inapplicable because this is neither a criminal nor contempt case. Kratzer and Moore have not supplied any authority applying illegal-sentence principles from those arenas to this kind of breach-of-contract dispute, and we are aware of none. *Cf. id.* We apply our general principles of error preservation and find no reviewable issue. *See Meier*, 641 N.W.2d at 537.

## IV.   Trial-Attorney Fees

Kratzer and Moore's final issue is that the district court abused its discretion in awarding UPI $24,000 in attorney fees under a lien and obligation provision in the covenants. They level six grounds as to why: the billing contained redactions, some entries related to Maxwell, the time billed included work on a never-filed motion for preliminary injunction, the entries included discussions with Norwalk public officials, the bill included preparing a no-trespassing notice to Kratzer for UPI properties, and they billed for responding to a media inquiry. Kratzer and Moore assert we should reduce the award by more than $8,200.

An award of attorney fees is reviewed for an abuse of discretion. *Robinson v. Cent. Iowa Power Coop.*, 21 N.W.3d 842, 854 (Iowa 2025). "An abuse of discretion occurs when a court's ruling is based on grounds that are unreasonable or untenable or when the record lacks substantial evidence to support the court's conclusion." *Id.* (cleaned up). "An applicant for attorney

fees has the burden to prove that the services were reasonably necessary and that the charges were reasonable in amount." *Schaffer v. Frank Moyer Constr., Inc.*, 628 N.W.2d 11, 23 (Iowa 2001). When assessing attorney fee awards, it is appropriate for the district court to consider:

> [T]he time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, the responsibility assumed and results obtained, the standing and experience of the attorney in the profession, and the customary charges for similar service.
>
> Additionally, the district court must look at the whole picture and, using independent judgment with the benefit of hindsight, decide on a total fee appropriate for handling the complete case.

*Id.* at 24 (cleaned up). The district court is "in an ideal position to judge the necessity of time and effort spent by counsel and the rationality of the relationship between services rendered and the causes of action and other matters involved in this case." *Id.* (cleaned up).

After Kratzer and Moore moved to enlarge findings under Iowa Rule of Civil Procedure 1.904(2), the district court explained that it presumed redactions in UPI's billings were necessary to preserve attorney-client privileged information and not in bad faith, that the billing for actions relating to third-party Maxwell was justified because Maxwell's inclusion in the case was a consequence of Kratzer and Moore's conduct, and that the not-filed preliminary injunction was a potential means of relief considered by UPI as a "direct result of actions of Kratzer and Moore." The court concluded that its "*de minimus* reduction of the fee claim in the amount of $413.25 was motivated by the court's desire to impose a supersedeas bond amount that adequately and reasonably compensated the Plaintiffs while keeping the bond at a round number." On our review, we do not disagree with any of these findings.

However, we also find that the district court failed to address all of Kratzer and Moore's arguments on this issue, despite the motion to enlarge. Specifically, we discern no ruling on the issues relating to the billing entries for trespass, the discussion with Norwalk public officials, or the media inquiry. We find the record inadequate for us to decide those issues in the first instance. As a result, we remand with directions for the district court to address those issues. Based upon its findings on those legal questions, the district shall modify its fee award (or not) accordingly.

## V.    Motion to Dismiss Maxwell

UPI cross-appeals, arguing that, since Maxwell was legal title holder, the district court should not have dismissed Maxwell from the suit. UPI argues that its requested relief—monetary charges and removal of the outbuilding—may become a continuing lien under the covenants. And if UPI foreclosed its lien, that would necessarily impact Maxwell's interest in the property despite not having a possessory interest.

But longstanding precedent holds that Maxwell's interest is not implicated by Kratzer and Moore's violations of the covenants:

> It has been held repeatedly by this court that when a landowner enters into a contract of sale whereby the purchaser agrees to buy, and the owner to sell, and whereby the vendor retains the legal title until the purchase money or some part thereof be paid, the ownership of the real estate, as such, passes to the purchaser, and that from such time forth the vendor holds the legal title as security for a debt and as trustee for the purchaser. The interest acquired by the vendee is "land," and the right and interest conferred by the contract upon the vendor is "personal property." . . . . A judgment against the vendee would become a lien on the land, inferior, of course, to the rights of the vendor.

*Junkin v. McClain*, 265 N.W. 362, 365 (Iowa 1936) (citation omitted). And a "vendor's security interest under an installment land sale contract, like the

interest created by a purchase-money mortgage, protects the vendor's . . . property rights from being appropriated by creditors of the vendee . . . ." 92A C.J.S. *Vendor & Purchaser* § 515 (2026) (footnote omitted). On our de novo review, we affirm the district court′s dismissal of Maxwell from the lawsuit.

### VI.    Appellate-Attorney Fees and Costs

UPI seeks appellate attorney fees under the covenants, as well as appellate costs. We dispose of the second first. Given UPI's victory on most substantive issues, our narrow remand on the trial-attorney-fee question, and our rejection of UPI's cross-appeal, we assess costs on appeal 80% to Kratzer and Moore, 20% to UPI, and 0% to Maxwell.

As for appellate attorney fees, we observe UPI requested them in its appellee's brief under the covenants' lien and obligation provision. *See Bankers Tr. Co. v. Woltz*, 326 N.W.2d 274, 278 (Iowa 1982) (concluding the fee-shifting provisions that are not expressly limited to trial-attorney fees also apply to appellate-attorney fees). We appreciate that UPI promptly filed an affidavit detailing its appellate attorney fees after oral argument. *See In re Marriage of Samuels da Fonseca Silva*, 15 N.W.3d 801, 808 (Iowa Ct. App. 2024) (expressing our preference "that parties requesting appellate fees do so in their briefs and submit an attorney-fee affidavit immediately after oral argument"). Kratzer and Moore did not file a written resistance to the request for appellate attorney fees.

UPI requests a total of $14,195 in appellate attorney fees and costs. We have carefully reviewed its fee affidavit, which includes appellate costs and fees related to enforcing the judgment below. The former are addressed by our ruling on costs in the first paragraph of this division. *See In re Romig's Marriage*, 207 N.W.2d 780, 784 (Iowa 1973). We do not find the latter

13

recoverable as appellate attorney fees, so we deny them without prejudice to UPI requesting those fees from the district court in the first instance. Where UPI's billing entries include a mix of appellate and judgment-enforcement fees, we have proportionally reduced the line items. After exercising our discretion, we order Kratzer and Moore to pay UPI $12,717.25 in appellate attorney fees.

## DISPOSITION

We affirm the district court ruling in all aspects but one: we remand to the district court for the limited purpose of addressing the trial-attorney fees issues as explained in this above. We separately order Kratzer and Moore to pay UPI $12,717.25 in appellate attorney fees. We assess costs on appeal 80% to Kratzer and Moore, 20% to UPI, and 0% to Maxwell.

**AFFIRMED ON APPEAL IN PART AND REMANDED TO CONSIDER TRIAL ATTORNEY FEES; AFFIRMED ON CROSS APPEAL.**